IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ROBERT SHERRELL AND KIMIKO SHERRELL,<br><br>          Plaintiffs,<br><br>     vs.<br><br>ASSOCIATION OF APARTMENT OWNERS OF CROSSPOINTE, *et al.*,<br><br>        Defendants. | Civil No. 24-00492 MWJS-RT<br><br>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, DENYING LEAVE TO AMEND, AND DENYING LEAVE TO FILE UNTIMELY SUPPLEMENTAL BRIEF |

## <u>INTRODUCTION</u>

Before the Court are Defendants' motions to dismiss the pro se complaint in this case. Defendants are an association of apartment owners, a law firm that represented the association in an earlier state court action, and two attorneys from that firm. They contend that Plaintiffs reached a binding settlement in state court in which Plaintiffs released all claims related to that action. And Defendants argue that this federal lawsuit is essentially an attempt to end-run that state court settlement. For that reason, Defendants argue that the complaint should be dismissed and leave should be denied.

The Court agrees. As Plaintiffs themselves put it, they seek here to "challenge the validity and enforceability of the settlement agreement, asserting that it was entered into under duress and without full understanding of its terms." ECF No. 23, at

PageID.378.  But a state court has already ruled that that settlement was binding—indeed, when Plaintiffs sought to back out of it, the state court entered an order ruling that it would be enforced.  The claims Plaintiffs press in this Court, moreover, fall within the terms of what they agreed to settle in state court.

For these reasons, the Court DISMISSES the complaint under the *Colorado River* doctrine, in deference to the state court proceeding.  This dismissal is with prejudice and without leave to amend.  The Court also construes Plaintiffs' filing of an unauthorized second response brief on March 5, 2025—well after briefing on the motions had closed—as a request for leave to file it, and it DENIES the request both as lacking good cause and as futile.

## BACKGROUND

Plaintiffs Robert and Kimiko Sherrell own an apartment in a condominium complex in Honolulu.  While that might sound like a dream, Plaintiffs allege that it has become something of a nightmare for them.

### A.    The State Court Proceedings

In 2022, Defendant Association of Apartment Owners of Crosspoint—the "Association" for short—through its attorneys at the law firm of Porter Kiakona Kopper, LLP (formerly Porter McGuire Kiakona, LLP), filed a state court action seeking

2

to foreclose on Plaintiffs' apartment.[1]  ECF No. 12-4.  They did so even though, according to the Association's own pleadings, the purported outstanding debt for maintenance fees and association dues amounted to less than $500.  *Id.* at PageID.70.  The Association tacked on another $400 for a "Delinquent Processing Fee" and "Late Charges."  *Id.*  Porter Kiakona then piled on an additional $7,682.92 in "Attorneys' Fees and Costs."  *Id.*  And if that were not enough, Plaintiffs allege there was no outstanding debt in the first place:  according to Plaintiffs, they timely sent the Association all payments owed, and the Association simply placed the payments in a "lock box," but failed to credit Plaintiffs for them.  ECF No. 12-5, at PageID.133-34 (capitalizations omitted).

Represented by counsel, Plaintiffs brought counterclaims against the Association alleging wrongful foreclosure, in violation of Hawaiʻi Revised Statutes (HRS) § 667; fraudulent business practices, in violation of HRS § 480-2; a breach of contract and failure to deal in good faith as a fiduciary; intentional infliction of emotional distress;

---

[1]    Ordinarily, a court must assess the legal sufficiency of a complaint without looking past its four corners.  But a court may take judicial notice of "matters of public record" without converting the motion to dismiss into a motion for summary judgment, so long as the facts are not "subject to reasonable dispute."  *Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d 1131, 1143 (D. Haw. 2013) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).  The Court agrees with Defendants that it may—and so does—take judicial notice of the records of state court proceedings, which Defendants supplied as exhibits in their filings and are also publicly available on the state court docket.  None of these filings are subject to reasonable dispute.  Some of the facts that follow in the text are drawn from those filings.

violations of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692; and various violations of HRS §§ 514A and 514B, which regulate condominiums and their property regimes.  ECF No. 12-5, at PageID.139-48.  Plaintiffs sought injunctive relief, equitable estoppel, a declaratory judgment, and punitive damages from the state court.  *Id.* at PageID.139, 148-49.

After several settlement conferences, Plaintiffs decided to abandon further litigation of their claims.  On February 22, 2024, they appeared in state court, together with their then-counsel, to put a settlement on the record.  ECF No. 12-7 (transcript of proceeding).  The Association was represented by two sets of attorneys:  An attorney from the law firm of Porter Kiakona Kopper, LLP, represented the Association in the foreclosure action, and Matthew Shannon and Suhyeon Burns, from the law firm of Lung Rose Voss & Wagnild, represented the Association in connection with Plaintiffs' counterclaims.  *Id.* at PageID.167-68.  (To skip ahead:  Shannon, Burns, and Lung Rose are now the named Defendants in this action, along with the Association.).

Shannon described the terms of the "global resolution of this litigation":

> The Association, as a counterclaim defendant, will pay $25,000 in general damages only to the Sherrells.  That amount will be paid by the Association's insurance company care o[f] our firm.  And the payment will be directed to the Association.  Payment will be made within 30 days of the execution of a settlement agreement.

> The Sherrells will make a payment of $7500 to the Association. That check will be payable to the Association care of their counsel's firm, [Porter Kiakona Kopper, LLP].  That payment will also be due within 30 days of the execution of the settlement agreement.

. . . .

[O]ur firm will prepare a written settlement agreement that will include standard terms, some of which are that the signature will be electronic and signed in counterparts; that the parties will represent they have the authority to sign the settlement agreement on their behalf.

. . . .

And there will be a neutral [sic] release of all claims by all parties.

*Id.* at PageID.168-69.

Shannon offered some clarifications.  He explained that within 30 days of receipt of Plaintiffs' payment to the Association, the Association would take the steps needed "to lift[,] satisfy[,] or otherwise clear the lien from the title" to Plaintiffs' property.  *Id.* at PageID.169.  In addition, Shannon stated that "[t]he stipulation for the dismissal with prejudice will be signed after all the completion of the items including payment and the . . . lien release."  *Id.* at PageID.169-70.

The state court then turned to Plaintiffs' counsel and asked whether he had "anything to add or revise to the material and essential terms that Mr. Shannon placed on the record," and counsel responded that Shannon "expressed it correctly."  *Id.* at PageID.170.  Counsel then summarized his understanding that "the Sherrells will pay $7500" to the Association, the Association's counsel would "have a release executed" for the lien, and "after all of those documents are signed, then a stipulation to dismiss will be entered."  *Id.*

The state court next asked Plaintiffs directly whether they agreed to the terms of the settlement that had been put on the record, and whether they agreed to be bound by those terms. *Id.* at PageID.171-72. Plaintiffs agreed that they did. *Id.* The court therefore stated that it would "issue a minute order that . . . indicate[s] that this matter has settled and any conferences or other pretrial deadlines are taken off the Court's calendar as of today." *Id.* at PageID.173.

After that settlement hearing, however, Plaintiffs refused to execute the written settlement agreement and release prepared by the Association's counsel. ECF No. 12-7, at PageID.162. The Association responded with a motion to enforce the settlement, and the state court held a hearing on August 30, 2024. *Id.* Now appearing pro se, Plaintiffs "raised questions about the written Settlement Agreement, but did not dispute the material and essential terms of the settlement that were previously placed on the record at the Settlement Conference." *Id.* And "[a]t the conclusion of the August 30 Hearing, the Sherrells agreed to execute the Settlement Agreement." *Id.*

But Plaintiffs did not follow through, and they continued to refuse to execute the agreement. The state court therefore scheduled a further hearing on November 15, 2024. *Id.* This time, Plaintiffs did not appear. *Id.* at PageID.162-63. And on December 18, 2024, the state court entered an order ruling that the written settlement agreement was consistent with the material and essential terms placed on the record at the settlement conference and that it would be enforced. *Id.* at PageID.163-64. The state

court also clarified that "the material and essential terms of the settlement between the

Parties" were, as relevant, the following:

a. The [Association], as Counterclaim Defendant, will pay $25,000.00 as general damages to the Sherrells.  The payment will be made by the [Association's] insurer, care of the [Association's counsel], and be paid to the [Association].

b. The Sherrells will make a payment of $7,500.00 to the [Association], by check payable to the [Association's] counsel.

c. The payments will be due within 30 days of the execution of the Settlement Agreement or the entry of this order granting the Motion to Enforce, whichever occurs sooner.

d. There will be a mutual release of all claims by all Parties, including a release of all Parties' respective agents, representatives, board members, and attorneys, or anyone acting by, through or under them.

*Id.* at PageID.163.  The state court also specifically ruled that "there is a binding contract

between the Parties" consisting of the aforementioned terms, and that the "settlement

terms were entered into by the Parties voluntarily and knowingly."  *Id.* at PageID.164.

### B.    The Federal Court Proceedings

Three days after the state court's November 15, 2024, further hearing on the

Association's motion to enforce the settlement—but before the state court had ordered

enforcement—Plaintiffs filed their pro se complaint in this Court.  ECF No. 1.  As noted,

the complaint names the Association, Shannon, Burns, and Lung Rose as Defendants.

*Id.* at PageID.1-2.  And it alleges a subset of the same claims Plaintiffs had previously

advanced as counterclaims—and settled—in the state foreclosure proceeding.  *Id.* at

PageID.5-9 (alleging violations of the FDCPA, fraudulent business practices in violation

of HRS § 480-2, a breach of contract and fiduciary duty, and a request for injunctive relief and monetary damages).  The only new claim in the federal complaint consists of an allegation of elder abuse—but that claim, too, rests on the same factual foundation as the others.

Hinting at the reason why Plaintiffs filed this suit, the complaint alleges that they only entered into the settlement agreement in state court because of "the overbearing efforts of Defendant to compel acceptance of the settlement agreement."  *Id.* at PageID.3.  And it alleges that the Association is purporting to pocket the $25,000 payment from its insurer "to address the claims asserted by Plaintiffs that the HOA claim of assessments, dues, fines and penalties are false."  *Id.*  That is, Plaintiffs suggest the Association will be paid for the value of the counterclaims that Plaintiffs brought against it, which, they point out, "appears to reward Defendant for the very conduct which Plaintiffs assert is improper."  *Id.*

Defendants have now filed motions to dismiss the complaint.  The Association contends that (1) this lawsuit is an impermissible *de facto* appeal of the state court's December 18, 2024, order granting the Association's motion to enforce the settlement, over which the Court lacks jurisdiction under the *Rooker-Feldman* doctrine; (2) dismissal is warranted under the *Colorado River* doctrine; (3) Plaintiffs' complaint fails to meet the heightened pleading standards that apply to claims of fraud; and (4) Plaintiffs lack statutory standing to bring a claim under HRS § 480-2.  *See* ECF No. 16.  Lung Rose,

Shannon, and Burns separately argue that the complaint lacks any factual allegations against them and that, in any event, they are shielded by the litigation privilege under Hawai'i state law.  *See* ECF No. 12.

Plaintiffs have opposed the motions.  In their opposition, Plaintiffs acknowledge that they seek to "challenge the validity and enforceability of the settlement agreement, asserting that it was entered into under duress and without full understanding of its terms."  ECF No. 23, at PageID.378; *see also id*. at PageID.376 (explaining that "Plaintiff[s] challenge[] the legitimacy of [the settlement] given the duress utilized to procure the purported agreement").  They also request an opportunity to amend their complaint to remedy any identified deficiencies.

The Court opts to resolve the motions without a hearing as authorized by Local Rule 7.1(c).

<u>DISCUSSION</u>

**A.**     **The Court Has Jurisdiction over Plaintiffs' Complaint**

At the outset, the Court must determine whether it has jurisdiction over Plaintiffs' lawsuit.  Plaintiffs' complaint includes a claim under the federal Fair Debt Collection Practices Act, and 28 U.S.C. § 1331 ordinarily would grant this Court subject matter jurisdiction over that federal question.  And in the typical case, the Court would have supplemental jurisdiction under 28 U.S.C. § 1367 over the related state-law claims.

The Association contends, however, that this is not a typical case.  Plaintiffs'

federal lawsuit, they say, is a "*de facto* appeal" of the state court's December 18, 2024,

order.  ECF No. 16, at PageID.203.  That order ruled that the earlier settlement

agreement was binding and granted the Association's motion to enforce it, and

Plaintiffs now ask this Court to reach a different result.  *Id.* at PageID.203-05.  In the

Association's view, these facts implicate what has come to be known as the *Rooker-*

*Feldman* doctrine.

The *Rooker-Feldman* doctrine "precludes a United States district court from

exercising subject-matter jurisdiction in an action it would otherwise be empowered to

adjudicate under a congressional grant of authority."  *Exxon Mobil Corp. v. Saudi Basic*

*Indus. Corp.*, 544 U.S. 280, 291 (2005).  It rests on the recognition that only the Supreme

Court of the United States has appellate authority "to reverse or modify a state-court

judgment," and that the jurisdiction of district courts is, by contrast, "strictly original."

*Id.* at 283-84 (cleaned up).

But while federal district courts lack appellate jurisdiction over state courts, they

do have "federal-court jurisdiction concurrent with jurisdiction exercised by state

courts."  *Id.* at 283.  That means, of course, that federal courts may properly exercise

jurisdiction over matters that have also been litigated in state court.  *See Ernest Bock, LLC*

*v. Steelman*, 76 F.4th 827, 835 (9th Cir. 2023) ("Generally, as between state and federal

courts, the rule is that the pendency of an action in the state court is no bar to

proceedings concerning the same matter in the Federal court having jurisdiction."
(cleaned up)).  When matters proceed through two separate court systems, courts
endeavor to reduce the risk of inconsistent rulings and ensure the wise deployment of
judicial resources.  But they prefer to do so using the doctrines of claim and issue
preclusion—as well as doctrines of comity and abstention—rather than the *Rooker-
Feldman* doctrine's sweeping jurisdiction stripping.  For as the Supreme Court has
warned, too ready resort to the *Rooker-Feldman* doctrine would "supersede[] the
ordinary application of preclusion law."  *Exxon Mobil Corp.*, 544 U.S. at 283.

That is not to say there is no proper space for the *Rooker-Feldman* doctrine to
operate.  But it is to say that the doctrine occupies "narrow ground" and must be
"confined" to a limited set of cases:  "cases brought by state-court losers complaining of
injuries caused by state-court judgments *rendered before the district court proceedings
commenced* and inviting district court review and rejection of those judgments."  *Id.* at
284 (emphasis added).  Put differently, "the applicability of the *Rooker-Feldman* doctrine
turns not on the *similarity* between a party's state-court and federal-court claims (which
is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal
relationship* between the state-court judgment and the injury of which the party
complains in federal court."  *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007).

This case falls outside of the *Rooker-Feldman* doctrine's narrow boundaries.  The
state court did not enter its order granting the Association's motion to enforce the

settlement agreement until December 18, 2024.  But Plaintiffs filed their complaint in

federal court nearly a month earlier, on November 18, 2024.  In other words, the

relevant state court order was not "rendered before the district court proceedings

commenced."  *Exxon Mobil Corp.*, 544 U.S. at 284.  And so as a matter of logic, the

injuries of which Plaintiffs complain in this lawsuit could not have been caused or

created by a state court order issued after the lawsuit was filed—particularly because

those injuries focus on Defendants' conduct, rather than the state court's rulings.

Plaintiffs are not complaining of an injury *caused* by the state court order, given that

they filed this lawsuit before the relevant state court order had ever issued.

The point can be illustrated in yet another way:  Imagine if Defendants had

chosen never to invoke the December 2024 court order as a defense to this federal

lawsuit.  In that scenario, Plaintiffs would have had no reason to press the state court

order themselves.  Here, Plaintiffs complain about *Defendants'* conduct—and contend

that Defendants violated federal and state laws that have nothing to do with the

December 2024 state court order—and if Defendants had opted not to mention the

enforcement order, Plaintiffs could in theory have prevailed on their claims without

mentioning it either.  That is because their claims center on the settlement agreement

put on the record and then rendered into writing, rather than the state court's order

enforcing that settlement.  Under these circumstances, it cannot be said that Plaintiffs

"challenge the adverse [state court] decisions themselves."  *Skinner v. Switzer*, 562 U.S.

521, 532 (2011).  They instead present claims—under the FDCPA and state laws—that are "independent" of that state court decision.  *Id*. (cleaned up).

Of course, Plaintiffs do argue that their independent claims should be allowed to go forward because the settlement agreement is unenforceable, and they thus ask this Court to reach a different legal conclusion on that issue from the one the state court reached in its order enforcing the settlement.  But as the Supreme Court has made clear, the *Rooker-Feldman* doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court."  *Exxon Mobil Corp.*, 544 U.S. at 293.  For even if the party "denies a legal conclusion that a state court has reached in a case to which he was a party," a district court may still exercise jurisdiction and leave it to state law to determine "whether the defendant prevails under principles of preclusion."  *Id*. (cleaned up).  In other words, while the earlier state court decision might bear on whether this Court *should* entertain Plaintiffs' claims afresh—a point taken up next—it does not strip this Court of the jurisdiction to do so.

Accordingly, the Court concludes that it has subject matter jurisdiction over this action.

> **B.      The Court Dismisses the Action with Prejudice Pursuant to the** *Colorado River* **Doctrine**

Although the Court possesses jurisdiction over this dispute, that alone does not resolve the question of whether it should exercise that jurisdiction.  The general rule "is

that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Ernest Bock*, 76 F.4th at 832 (cleaned up). But in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), the Supreme Court identified exceptional circumstances in which a district court might properly stay or dismiss a parallel action as a matter of sound discretion.

The Association argues that this case fits within the narrow circumstances in which the *Colorado River* doctrine warrants dismissal. The Court agrees.

1. The Supreme Court's *Colorado River* decision creates what is, essentially, a narrow exception to federal courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them." 424 U.S. at 817. Before a district court can consider staying or dismissing an action based on the *Colorado River* doctrine, it must find that in light of the parallel state court proceedings, "the federal court will have *nothing further to do* in resolving any substantive part of the case, whether it stays or dismisses." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983) (emphasis added). And that threshold requirement is strict: the litigation *must* be resolved by the state court action. When, instead, "federal litigation will be fully resolved only if parallel state court proceedings end in one of several possible outcomes," a stay or dismissal under *Colorado River* is not appropriate. *Ernest Bock*, 76 F.4th at 832. Courts have referred to this threshold requirement—that "the parallel state-court litigation will be an adequate

14

vehicle for the complete and prompt resolution of the issues between the parties"—as

the requirement of "parallelism."  *Id.* at 838 (citation omitted).

If that threshold requirement is met, the court must consider and weigh the force

of that factor, together with seven other factors:

> (1) which court first assumed jurisdiction over any property at stake;
> (2) the inconvenience of the federal forum; (3) the desire to avoid
> piecemeal litigation; (4) the order in which the forums obtained
> jurisdiction; (5) whether federal law or state law provides the rule of
> decision on the merits; (6) whether the state court proceedings can
> adequately protect the rights of the federal litigants; [and] (7) the desire to
> avoid forum shopping.

*Id.* at 836 (citation omitted).  The factors "are not a mechanical checklist," but instead

must be applied "in a pragmatic, flexible manner with a view to the realities of the case

at hand."  *Id.* at 836-37 (cleaned up).  And when applying them, a court must be mindful

that "[t]he underlying principle guiding this review is a strong presumption *against*

federal abstention."  *Id.* at 837 (cleaned up).

2.  The Association argues that the presumption has been overcome here, and the

Court agrees.  This case presents the exceptional situation in which the *Colorado River*

factors weigh in favor of dismissal.

a.  Begin with the threshold requirement of parallelism.  Plaintiffs' complaint

in this Court alleges FDCPA violations, fraudulent business practices that violate HRS

§ 480-2, breaches of both a contract and a fiduciary duty, and a request for injunctive

relief and monetary damages.  ECF No. 1, at PageID.5-9.  In state court, Plaintiffs

brought counterclaims against the Association alleging violations of the FDCPA,

fraudulent business practices in violation of HRS § 480-2, violations of condominium

law under HRS §§ 514A & B, breach of contract and fiduciary duty, wrongful

foreclosure, and intentional infliction of emotional distress. ECF No. 12-5, at

PageID.139-48. Plaintiffs also sought injunctive relief, equitable estoppel, a declaratory

judgment, and punitive damages from the state court. *Id.* at PageID.139, 148-49.

Here is how the claims match up:

| State Court Claims | Federal Court Claims |
| --- | --- |
| Violations of the FDCPA, 15 U.S.C. § 1692 | Violations of the FDCPA, 15 U.S.C. § 1692 |
| Fraudulent business practices in violation of HRS § 480-2 | Fraudulent business practices in violation of HRS § 480-2 |
| Breach of contract and fiduciary duty | Breach of contract and fiduciary duty |
| Wrongful foreclosure | |
| Intentional infliction of emotional distress | |
| Violations of HRS §§ 514A & B | |
| | Elder abuse |

What the above chart shows is that—except for Plaintiffs' elder abuse

allegations—every one of the claims they assert in this Court was also asserted, and

thus settled, in the state court action. Even as to the elder abuse claim, the *facts* on

which Plaintiffs rely are the same as the ones on which they relied in state court,

meaning that Plaintiffs' settlement of the other claims resting on these same facts would

16

sweep away this elder abuse claim as well.  Moreover, if a separate chart were created

on remedies, it would look similar—it would show that in state court, Plaintiffs sought

injunctive relief and punitive damages, among other things, whereas Plaintiffs similarly

seek injunctive relief and damages here.

This is, therefore, the rare case in which there can be no "substantial doubt" that

"the parallel state-court litigation will be an adequate vehicle for the complete and

prompt resolution of the issues between the parties." *Ernest Bock*, 76 F.4th at 838-39

(cleaned up).  The state court's December 18, 2024 order ruled that the parties had

entered into a binding and enforceable agreement to effect "a mutual release of all

claims by all Parties, including a release of all Parties' respective agents, representatives,

board members, and attorneys, or anyone acting by, through or under them."

ECF No. 12-7, at PageID.163.  This language covers the very claims—and the very facts

underlying the elder abuse claims—Plaintiffs seek to advance in this lawsuit.  It covers

the very remedies Plaintiffs sought in state court.  And it provides that these claims are

all to be released.  That broad settlement term provides for a complete and prompt

resolution of the claims Plaintiffs seek to advance in this Court.

To be sure, the state court case does not appear to have been reduced to a final

judgment—presumably because not all of the terms of the settlement agreement have

yet been satisfied.  But the state court has already ruled that the agreement is

enforceable, and so all that remains is for it to be enforced.  For example, Plaintiffs

appear to allege in their complaint in this Court that the Association has not provided

the $25,000 that they agreed the Association's insurer would pay them.  ECF No. 1, at

PageID.3 (alleging that the Association is purporting to pocket the $25,000 payment

from its insurer "to address the claims asserted by Plaintiffs that the HOA claim of

assessments, dues, fines and penalties are false," despite the settlement terms requiring

the money to be paid to Plaintiffs as general damages); *see also* ECF No. 24, at

PageID.381 (suggesting that the $25,000 insurance check was "made out to Mr. Sherrell"

but then improperly "signed over to the lawyers of condominium" in violation of the

settlement terms).  To the extent Plaintiffs need assistance in enforcing that aspect of the

settlement agreement, they have a ready forum in the state court.[2]  And once the parties

have fully complied with the settlement agreement, all that will be left for the state

court will be to enter a final judgment dismissing the case.  Given these circumstances,

there is no substantial doubt—indeed, there is no doubt—that once the state court

enters a final judgment, there would be nothing left for this Court to do but to enforce

the collateral effect of that judgment by dismissing this case.  *Cone Mem'l Hosp.*, 460 U.S.

at 28 (explaining that the parallelism requirement is met when "the federal court will

have nothing further to do in resolving any substantive part of the case").

---

[2]     It is conceivable that Plaintiffs themselves have not paid the $7,500 they owe to
the Association under the settlement agreement.  It is unclear—but this Court has no
occasion to resolve—why that $7,500 could not simply be subtracted from the $25,000
that the Association is required, via its insurer, to pay Plaintiffs under the agreement.

The only wrinkle here is that the state counterclaims were brought against the Association, but not against Lung Rose, Shannon, or Burns. But that detail does not change the analysis for two reasons. First, Plaintiffs effectively concede that the settlement agreement bars their claims against the Association—as the Association rightly points out in its reply. *See* ECF No. 21, at PageID.369-70. Second, although Plaintiffs contend that the settlement agreement does not bar their claims against Lung Rose, Shannon, or Burns, their contention is incorrect. The state court ruled, in its December 18, 2024 order, that the mutual release covered "all claims by all Parties, including a release of all Parties' respective agents, representatives, board members, and attorneys, or anyone acting by, through or under them." ECF No. 12-7, at PageID.163. As they correctly point out, Lung Rose, Shannon, and Burns did nothing more than serve as the Association's "attorneys" in the state foreclosure action. Having settled their claims against the Association, Plaintiffs are barred from seeking to relitigate those same claims against the Association's attorneys by the plain terms of the settlement agreement.[3]

Accordingly, the threshold parallelism requirement is satisfied, and the Court now turns to a consideration of the remaining factors under the *Colorado River* doctrine.

---

[3]    That is especially so because, as Lung Rose, Shannon, and Burns point out in their motion papers, their role was limited to defending the Association against Plaintiffs' counterclaims—the very counterclaims Plaintiffs settled.

b.  The first and fourth factors both concern the timing of the respective lawsuits.  The first asks "which court first assumed jurisdiction over any property at stake," and the fourth concerns "the order in which the forums obtained jurisdiction." *Ernest Bock*, 76 F.4th at 836 (citation omitted).  Both of these factors weigh heavily in favor of deferring to the state court.  As the Association correctly notes, the only conceivable "property" at issue here is Plaintiffs' apartment.  *See* ECF No. 16, at PageID.207.  The state court first assumed jurisdiction over that property through the state foreclosure action.  And, indeed, this Court has never assumed jurisdiction over that property, since Plaintiffs' claims in this Court—which were its counterclaims in the foreclosure action—are only ancillary to the apartment itself.

The Association also correctly notes that the lawsuit in state court began long before Plaintiffs filed their lawsuit in this Court.  *See* ECF No. 16, at PageID.211.  Indeed, Plaintiffs appeared in state court in February 2024 to enter a settlement on the record, and they appeared on August 30, 2024, for a hearing on the Association's motion to enforce the settlement.  The state court then held a further hearing on the Association's motion on November 15, 2024.  It was only after all of these developments—including after the parties had already settled the state court matter—that Plaintiffs filed their federal complaint.

The Court further agrees with the Association that, although Plaintiffs filed their federal complaint a few weeks before the state court entered its December 18, 2024,

order, that sequencing is not material to the *Colorado River* analysis (though, as

explained above, it does matter for *Rooker-Feldman* purposes).  The December 18, 2024

order did not initiate the state court case; it marked, to a significant degree, its end.

That is, the parties had already entered into a binding and enforceable settlement

agreement by as early February 2024; the December 18, 2024 order merely recognized

the earlier settlement as such.  And the state court proceedings began much earlier than

February 2024—both parties' claims had been pending since 2022.  Under an

appropriately pragmatic and flexible application of this fourth factor, the state court

must be viewed as having obtained jurisdiction over this matter well before this Court

did so.

   c.  The second, fifth, and sixth factors inquire into the relative convenience of

the state and federal forums:  The second asks directly about "the inconvenience of the

federal forum," the fifth asks indirectly about "whether federal law or state law

provides the rule of decision on the merits," and the sixth asks "whether the state court

proceedings can adequately protect the rights of the federal litigants."  *Ernest Bock*, 76

F.4th at 836 (citation omitted).  None of these factors weigh against dismissing this case.

  The federal forum would not be inconvenient here, given that both the state

court and this Court are located in Hawaiʻi.  But the flipside is that the state court is no

less convenient for the parties—as evidenced by their initial decision to litigate and,

ultimately, settle their claims there.

The nature of the rules of decision also does not weigh against dismissal, for there is concurrent jurisdiction in both state and federal court over all claims at issue. *See Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (explaining that the fifth factor "becomes less significant" when there is concurrent state and federal jurisdiction over a claim).

Finally, there is no reason to believe that the state court forum would fail to protect the rights of Plaintiffs as federal litigants. That is to say, "there is no question that the state court has [the] authority to address the rights and remedies at issue in this case." *R.R. Street & Co. v. Transport Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011). While Plaintiffs now argue that they entered into the settlement agreement as a result of duress, they had every opportunity to raise that contention in state court—either during the February 2024 settlement hearing itself, when they stated on the record that they understood and accepted the agreement's terms; or during the August 2024 hearing, at which the state court first considered the Association's motion to enforce the settlement; or at the November 2024 hearing, which Plaintiffs did not attend. And although Plaintiffs suggest that the Association has not fulfilled some of its obligations under the settlement agreement—in particular, that it has not turned over the $25,000 from its insurer—Plaintiffs have a ready forum in state court for raising that contention as well, as explained above.

d. That leaves two matters concerning judiciary policy: the third factor, which focuses on "the desire to avoid piecemeal litigation," and the seventh factor, concerning "the desire to avoid forum shopping." *Ernest Bock*, 76 F.4th at 836 (citation omitted). The third factor is neutral, but the seventh weighs heavily in favor of dismissal.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *R.R. Street & Co.*, 656 F.3d at 979 (citation omitted). The "mere possibility of piecemeal litigation" does not, however, constitute an "exceptional circumstance" warranting a *Colorado River* stay or dismissal. *Id.* Exceptional circumstances exist only if there is a "special concern about piecemeal litigation" that "can be remedied by staying or dismissing the federal proceeding." *Id.* (cleaned up). Special concerns include, for example, where "Congress has passed a law expressing a preference for unified state adjudication." *United States v. Morros*, 268 F.3d 695, 706 (9th Cir. 2001). Although allowing Plaintiffs' lawsuit to go forward in federal court would unquestionably result in piecemeal litigation, the Court identifies no special concerns of the sort that might weigh in favor of a stay or dismissal. This factor therefore is a neutral one.

The factor concerning forum shopping, by contrast, weighs heavily in favor of a dismissal of this action. Forum shopping "refers to '[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard.'" *R.R. Street & Co.*, 656

F.3d at 981 (alteration in original) (quoting Black's Law Dictionary 726 (9th ed. 2009)).

And the Ninth Circuit has endorsed *Colorado River* stays and dismissals "when it was

readily apparent that the federal plaintiff was engaged in forum shopping." *Id.* One of

the ways in which a court might properly identify an effort at forum shopping is by

scrutinizing "the vexatious or reactive nature of either the federal or the state

litigation." *Cone Mem'l Hosp.*, 460 U.S. at 17 n.20.

Forum shopping is readily apparent here. Plaintiffs initially litigated their

counterclaims in state court and ultimately settled those claims. After the settlement on

the record, Plaintiffs appear to have sought to back out of it, and the state court held a

hearing on the Association's motion to enforce the settlement in August 2024. A further

hearing was held on November 15, 2024, and Plaintiffs—who failed to appear at that

further hearing—filed their complaint in this Court three days later. This factual record

makes it abundantly clear that Plaintiffs anticipated that the state court would find the

settlement to be enforceable (as it did), and that they filed their federal lawsuit in the

hope that this Court would reach a different conclusion. Plaintiffs' federal complaint is

thus entirely reactive: they initially showed no interest in federal litigation, and they

sought to litigate their claims in federal court only after they became unsatisfied with

their settlement of these claims in state court. These circumstances strongly weigh in

favor of a *Colorado River* dismissal. *See Nakash*, 882 F.2d at 1417 (affirming district

court's *Colorado River* stay where "after three and one-half years," the plaintiff had

"become dissatisfied with the state court and now seeks a new forum for their claims,"
and noting that the Ninth Circuit had "no interest in encouraging this practice").

*    *    *

To recap:  The parallelism requirement has been satisfied, and it weighs strongly
in favor of a *Colorado River* dismissal.  The first, fourth, and seventh factors, too, weigh
strongly in that direction.  And while the second, third, fifth, and sixth factors do not
support dismissal, they do not cut against it either.

The Court takes seriously the presumption that it should exercise its jurisdiction
where, as here, that jurisdiction exists.  But after carefully considering the above factors
and assessing their significance under the circumstances of this case, the Court
concludes that they weigh decisively in favor of dismissing this action under the
*Colorado River* doctrine.  And given this conclusion, the Court does not resolve the other
arguments Defendants have offered for why Plaintiffs' complaint should be dismissed;
most of those arguments (for instance, the argument that the complaint does not offer
sufficient factual detail to state a plausible claim for relief) would, even if accepted, have
entitled Plaintiffs to an opportunity to amend their complaint to address the
deficiencies.  Given the Court's decision to dismiss this action, any such amendment
would be futile.

//

//

### C.    Plaintiffs' Request to File an Untimely Supplemental Brief is Denied

On March 5, 2025, Plaintiffs' submitted an unauthorized supplemental "response" to the motions to dismiss.  ECF No. 24.  In it, Plaintiffs repeat their contention that the Association is purporting to claim the $25,000 check that its own insurance company was required to pay out to the Sherrells as part of the state court settlement.  *Id.* at PageID.381.  Plaintiffs also assert, for the first time, that "the settlement agreement was not agreed to by the Plaintiff[s]" and that its enforcement would be unjust and inequitable.  *Id.* at PageID.382.  They contend that the release of claims was too broad and therefore contrary to state public policy.  *Id.* at PageID.384.  And Plaintiffs now assert that "this case was filed to stop what was happening in the lower court."  *Id.* at PageID.383.

The Court construes this submission as a request for leave to file a supplemental brief.  And the Court denies the request.  While Plaintiffs are proceeding pro se, they still must abide by this Court's procedural rules.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants.").  There is no question that this submission is untimely, that Plaintiffs had no permission to file it, and that they could have made the arguments in this untimely assertion in their timely one.

Even if the Court were to consider the arguments in this new submission, they would not warrant a different result.  As the Court explained above, to the extent

26

Plaintiffs wish to argue that the Association is failing to comply with the terms of the

settlement, they remain free to raise that argument in state court.[4]  To the extent

Plaintiffs wished to challenge the validity or enforceability of the state court settlement,

they had a full opportunity to raise those arguments—and simply chose not to—either

at the August 30, 2024, or the November 15, 2024, hearing, or at any point before the

state court issued its December 18, 2024 order enforcing the settlement.  And to the

extent Plaintiffs ask this Court to somehow "stop" the state court proceedings, that

request—had Plaintiffs made it in their complaint or prior submissions—would indeed

have implicated the *Rooker-Feldman* doctrine, for this Court has no authority to sit in

judgment of the state court's proceedings.  ECF No. 24, at PageID.383.  The state court is

not a "lower" court than this one.  *Id.*  It is a court of equal dignity in the judicial system

of a separate sovereign.

//

//

---

[4]      Plaintiffs' submission also attaches a news article concerning an unrelated case in which Porter Kiakona Kopper, LLP—the Association's attorneys in the state foreclosure action in this case—were held to have engaged in abusive debt collection practices.  ECF No. 24-4.  The Court has no occasion to consider whether the attorneys' conduct was similarly abusive in this case; nor will the state court, because Plaintiffs chose to settle their claims and chose not to contest the enforceability of the settlement.  And again, as for Plaintiffs' assertions that Porter Kiakona is purporting to pocket the $25,000, paid from its own insurer, that the settlement terms indicated belong to the Sherrells as general damages to settle their state court counterclaims, that is a matter that the state court can and should take up.  There is no reason to believe Plaintiffs lack an appropriate forum for these contentions in state court.

Accordingly, the Court denies Plaintiffs' request to file an untimely

supplemental brief, both because there is no good cause to allow it, and because it

would be futile to allow it in any event.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss

with prejudice, DENIES leave to amend, and DENIES Plaintiffs' request for leave to file

an untimely supplemental brief.  The Clerk of the Court is DIRECTED to close the case.

IT IS SO ORDERED.

DATED:  March 6, 2025, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Civil No. 24-00492 MWJS-RT, *Robert and Kimiko Sherrell v. Association of Apartment Owners of Crosspointe*, et al.; ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, DENYING LEAVE TO AMEND, AND DENYING LEAVE TO FILE UNTIMELY SUPPLEMENTAL BRIEF